Matthew D. Carlson (State Bar No. 273242)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 817-1470
Email: mcarlson@carlsonlegalservices.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE LINEWEBER,<br><br>      Plaintiff,<br><br>  v.<br><br>DHL EXPRESS (USA), INC.,<br><br>      Defendant. | Case No.:<br><br>**COMPLAINT FOR: (1) VIOLATION OF THE FAMILY MEDICAL AND LEAVE ACT, 29 U.S.C. § 2615; AND (2) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT - 1

Plaintiff Dale Lineweber (hereafter "Plaintiff"), by and through his attorney, brings this action against Defendant DHL Express (USA), Inc. (hereafter "DHL" or "Defendant") and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from DHL's termination of Plaintiff's employment as a result of Plaintiff's use of company-approved protected FMLA leave.

2. In February 2013, Plaintiff was required to take approximately nine weeks of FMLA leave for multiple knee surgeries. DHL approved this leave. During his 2013 absence, one of Plaintiff's superiors stated that the length of Plaintiff's leave was excessive. In late 2013, Plaintiff received his yearly "competency assessment," in which his manager wrote: "Plaintiff had a tough year as he was out for pockets of time" and "NUQ [the Fremont physical plant] was understaffed for several months which did make it challenging to take time off, as well as develop him and others." The same manager also wrote in the same performance review: "NUQ needs to bust out of status quo. Resources were tight, productivity was flat, service okay. I need the fully staffed, strong management team to excel this year."

3. On June 12, 2014, Plaintiff was required to take approximately 4.5 weeks of FMLA leave for treatment for a concussion, which was exacerbated by a fall. DHL approved this leave.

4. Plaintiff was suspended on July 18, 2014, the day he returned from leave, and terminated two days later. DHL's ostensible reason for his termination was because Plaintiff did not ensure that his subordinates completed certain training by the end of May 2014. However, similarly situated managers in DHL's Oakland and San Francisco operations also failed to ensure that their subordinates completed the same training by the same deadline, yet were not terminated by DHL and are still employed by the company.

COMPLAINT - 2

5. Because Plaintiff's use of FMLA leave was a motivating factor in DHL's decision to terminate him, his termination constitutes interference with Plaintiff's federally protected FMLA rights. Additionally, because Plaintiff's termination was in violation of the FMLA, it is also a termination in violation of public policy under California state law.

## II. JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the value of $75,000, inclusive of attorney's fees, exclusive of interest and costs, and because this action is between citizens of different states. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the case involves a violation of federal law.

7. The Court has personal jurisdiction over DHL because DHL purposefully avails itself of the privilege of conducting activities in California by, *inter alia*, providing mail services in the state of California and in this district.

## III. VENUE

8. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of California.

## IV. THE PARTIES

9. Plaintiff Dale Lineweber is a citizen of California, domiciled in Tracy, California. Plaintiff was employed by DHL from on or about June 5, 1985 to July 18, 2014.

10. Defendant DHL Express (USA), Inc. is an Ohio corporation with its principal place of business in Florida, doing business in the mail services industry in California.

//
//
//

## V. FACTUAL ALLEGATIONS

11. Plaintiff began working for DHL approximately twenty-nine years ago and moved into a management position just five years later, eventually working his way up to "Center Manager" at DHL's Fremont location, the position he held until his termination.

12. As Center Manager, Plaintiff had four other management employees who reported to him, and was generally responsible for the operations side of the company's day-to-day business in Fremont.

13. Until his termination, Plaintiff was in good standing with the company, and was never subject to discipline or any type of corrective action. His performance evaluations indicate that he regularly met or exceeded company goals.

14. In early 2013, Plaintiff took FMLA leave to undergo knee surgery. The initial knee surgery showed that Plaintiff needed additional microfracture surgery, and ultimately the combination of both procedures kept him out of work on FMLA leave for approximately nine weeks.

15. DHL approved the full extent of Plaintiff's FMLA leave during this time.

16. Area Manager Jeff Funk, Plaintiff's immediate supervisor, informed Plaintiff that Mr. Funk's supervisor, John Fasullo, stated that the length of Plaintiff's FMLA leave was excessive. Mr. Fasullo unfavorably compared Plaintiff's length of leave to that taken by another employee who had taken FMLA leave for a different serious health condition.

17. At the end of 2013, Plaintiff was given his yearly (and, as it would turn out, final) "competency assessment." Mr. Funk, the author of the Manager Comments in the review, determined that Plaintiff fully met or exceeded all competencies, with one exception: Under the heading "Developing self – Manager," the "Manager Comment" stated "Dale had a tough year as he was out for pockets of time" and "NUQ was understaffed for several months which did make it challenging to take time off, as well as develop him and others." Another Manager Comment in the same performance

review, under the heading "Driving high performance – Manager" stated, "NUQ needs to bust out of status quo. Resources were tight, productivity was flat, service okay. I need the fully staffed, strong management team to excel this year."

18. On June 12, 2014, Plaintiff was involved in an automobile accident in which he suffered a concussion. Plaintiff took FMLA leave to receive medical treatment for the injury.

19. Unfortunately, Plaintiff's initially mild concussion was exacerbated by a fall on June 16, 2014, and Plaintiff was forced to stay on FMLA leave until on or about July 16, 2014.

20. DHL approved the full extent of Plaintiff's FMLA leave during this time.

21. Plaintiff was suspended on July 16, 2014 – the day he returned to work – and was terminated just two days later. Plaintiff was told that he was terminated because he did not ensure that his subordinates completed FAA-regulated training.

22. However, Plaintiff is informed and believes that similarly situated managers in DHL's Oakland and San Francisco service centers made the same oversight, yet were not terminated by DHL and are still employed by the company.

23. Additionally, Plaintiff is informed and believes that his subordinates in fact completed the necessary FAA-regulated training shortly after his termination, and is further informed and believes that DHL suffered no appreciable harm as a result of the delay. Further, this was the first time Plaintiff made such an oversight, as, in previous years, he ensured that his subordinates performed this training in a timely fashion.

24. Plaintiff's termination caused him significant economic and non-economic damages, entitling him to economic remedies pursuant to the FMLA and additional tort remedies pursuant to his claim for wrongful discharge in violation of public policy.

25. Plaintiff was singled out for adverse action as a result of his use of company-approved FMLA leave. No other similarly situated individuals who made the same errors with respect to training were terminated. Plaintiff was actually *told*, in his performance review, that his use of FMLA leave was problematic for DHL. DHL's decision to

terminate Plaintiff was motivated by its desire to end its relationship with a highly paid employee who had taken leave on a regular basis in the two years preceding his termination. DHL used Plaintiff's training error (for which no other employee was similarly disciplined) as an attempt to hide its true motivation. Accordingly, DHL's decision to terminate Plaintiff was in conscious disregard of Plaintiff's rights under the FMLA.

## VI.  FIRST CLAIM

### Violation of the Family and Medical Leave Act

26. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

27. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under FMLA.

28. An employee may prove his employer interfered with the employee's right to take protected leave by showing by a preponderance of the evidence that his taking of FMLA-protected leave constituted a negative factor in the decision to terminate him.

29. As evidence by Plaintiff's supervisors' verbal and written comments about Plaintiff's use of FMLA leave described above, as evidenced by the time between Plaintiff's use of FMLA leave and his termination, and as evidence by Plaintiff's position as a highly paid, older employee at DHL, Plaintiff's use of FMLA-protected leave constituted a negative factor in DHL's decision to terminate him.

30. Plaintiff's termination caused him damage, and, pursuant to the FMLA, DHL is liable to Plaintiff for any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff by reason of the violation, and interest thereon at the prevailing rate, as well as liquidated damages in the same amount. Plaintiff is also entitled to equitable relief pursuant to the FMLA, including but not necessarily limited to front pay and/or reinstatement.

## VII.  SECOND CLAIM

### Wrongful Termination in Violation of Public Policy

31. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

32. A termination in violation of the FMLA, is, as a matter of law, a discharge in violation of public policy.

33. Plaintiff's termination caused him economic damage as described above. In addition, Plaintiff's termination caused him emotional distress, including, but not necessarily limited to, nervousness, grief, anxiety, worry, shock, humiliation and indignity.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

a. Economic and non-economic damages pursuant to the FMLA and state law;

b. Equitable relief, including bot not necessarily limited to front pay and/or reinstatement pursuant to the FMLA;

c. Attorneys' fees pursuant to the FMLA;

d. Witness fees pursuant to the FMLA;

e. Costs pursuant to the FMLA and applicable state and/or federal law;

f. Interest pursuant to the FMLA and applicable state and/or federal law; and

g. Punitive damages pursuant to state law.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable.

Dated:  December 5, 2014                                    Carlson Legal Services

                                                            By:  /s/ Matthew D. Carlson
                                                                 Matthew D. Carlson
                                                                 Attorney for Plaintiff

COMPLAINT - 7